UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

BRETT RYAN DUBOSE, *ET AL.*          )
                                      )
V.                                    )          NO. 2:07-CV-115
                                      )
CITY OF MORRISTOWN, *ET AL.*         )

## REPORT AND RECOMMENDATION

The plaintiffs have moved that their action be certified as a class action under Rule 23 of the Federal Rules of Civil Procedure. (Doc. 2). The motion has been referred to the magistrate judge for a report and recommendation pursuant to the order of Senior District Judge Jordan and 28 U.S.C. § 636.[1]

As an initial matter, it is noted that there is no requirement that the court conduct an evidentiary hearing to determine the appropriateness of certification as a class action. *See, Franks v. Kroger Co.*, 649 F.2d 1216, 1223 (6th Cir. 1981). The plaintiffs' complaint, their motion and brief, and the response of the City of Morristown and its two city police officers are more than adequate to determine whether or not this case should be certified as a class action.

The pertinent portions of Rule 23 read as follows:

> (**a**) **Prerequisites to a Class Action**. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the

---

[1]Doc. 3.

class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

    **(1)** the prosecution of separate actions by or against individual members of the class would create a risk of

        **(A)** inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

        **(B)** adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

    **(2)** the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

    **(3)** the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The plaintiffs make the following allegations in their complaint:

***Brett Ryan DuBose:***

Shortly after midnight on September 26, 2004, the plaintiff Dubose was driving his vehicle on Highway 160. Notwithstanding that Dubose had violated no laws, Officer Jason Young with the Morristown Police Department ordered plaintiff to stop on the shoulder of the highway. Although Young's police cruiser was equipped with videotape, he subsequently altered that tape to exclude any evidence that would have proven that DuBose had violated no law justifying the traffic stop.

During the stop, another police officer, Brian Sulfridge, arrived on the scene. Sulfridge also subsequently edited the videotape in his cruiser to exclude any evidence of the events that ultimately transpired.

DuBose alleges that he "eagerly accepted" an offer for a blood alcohol test but, for no reason, Officer Young handcuffed DuBose, prompting DuBose to question why he was doing so. Officer Young thereupon became angry and, outside of the video range of the camera, but within its audio range, ordered DuBose to put his hands behind him, notwithstanding that this move was "physically impossible" for plaintiff to perform presumably because the officer had handcuffed his hands in front of him. DuBose maintains that Officer Young threw him to the ground, and then drove his knee into DuBose's back, all the while yelling "get on the ground" for the benefit of the audio recorder. As officer Young continued to physically assault plaintiff while he was on the ground, Young sprayed him directly in his face with pepper spray.

After DuBose was being transported to jail in the rear seat of Officer Young's cruiser, Young violently braked his car, merely for the purpose of causing plaintiff to be thrown

3

forward against the cage that separated the front and rear compartments. He also claims that Young pulled his cruiser to the shoulder of the highway and sprayed him with pepper spray and beat him with his fists.

After arrival at the Hamblen County Jail, DuBose says he was again sprayed with pepper spray before he was removed from the cruiser.

When DuBose was placed in a cell in the Hamblen County Jail, three jailers (all employees of the Hamblen County Sheriff's Department) entered plaintiff's cell and assaulted him. Indeed, DuBose claims that he was assaulted by five jailers or deputies of the Hamblen County Sheriff's Department throughout the early morning hours of September 26, 2004. During one of these assaults, Jailer Doyle Davis shot plaintiff in the stomach at point blank range with a riot gun which was located with "pepperball" ammunition.

DuBose has sued Police Officer Young for conducting a negligent investigation regarding the initial traffic stop; for false arrest; for unlawful seizure; for violation of Tennessee civil rights; for false arrest; for assault; for malicious prosecution; and for violation of Tennessee Governmental Tort Liability Act.

He has sued Officer Sulfridge for assault.

He asks that vicarious liability be imposed upon Chief of Police Overholt and the City of Morristown by virtue of the various tortious acts of the two police officers.

DuBose also has sued the Hamblen County jailers for assault, and the then-sheriff, Otto Purkey, for "condoning and promoting" an atmosphere of violence towards inmates of the Hamblen County Jail.

DuBose has sued Jailer Ronnie ("Rookie") Inman[2] for condoning and promoting an atmosphere of violence, and he has sued Hamblen County for the actions of the jailers.

DuBose sues Jailer Doyle Davis for "outrageous conduct" in shooting DuBose with the riot gun.

With respect to his various claims, DuBose asserts that he sustained pain and suffering, permanent and severe psychological injuries, and various medical expenses, for all of which he seeks damages.

*Jodie Philpot*:

On August 1, 2006, Philpot was arrested for a narcotics offense. For no apparent reason, she was placed in an isolation cell in the Hamblen County Jail, where she remained for two to three months. She claims that she was not allowed to shower, use the telephone, or to have any contact with anyone. She alleges that this isolation cell did not have running water for several days and, on one occasion, sewage backed up into her cell and was not cleaned up for several days.

After being incarcerated for two months, plaintiff asserts that she began having chest pains, but she was never allowed to see a physician.

On October 9, 2006, she began running a fever, had severe chest pains, and was vomiting. Again, she was not allowed to see a physician. Later that day, notwithstanding that she had not been seen by any health care practitioner, she was given a nitroglycerine

---

[2]No relation to this magistrate judge.

tablet by a jailer, causing her condition to worsen. Later that day, and early the next, Philpot was taken to the "drunk tank" where Hamblen County jailers repeatedly sprayed her with pepper spray and beat and kicked her in her head and body. Philpot contends that her injuries from this beating were so severe that she was in a coma for twelve days and now has permanent brain damage. She claims that Jailer "Rookie" Inman threatened that she "would never leave his jail" if she ever told anyone what happened.

Plaintiff sues the various John Doe jailers in violation of her federal and Tennessee civil rights, for violation of the Tennessee Governmental Tort Liability Act, and for assault. She sues Sheriff Otto Purkey for failing to conduct a proper investigation.

*Jason Castaneda*:

Castaneda states that, after being arrested, he escaped by stealing a police cruiser from the parking lot at the Hamblen County Jail. After being apprehended, he was placed in the Hamblen County Jail where two unknown jailers provoked him by "blaspheming God." Castaneda was taken to the "drunk tank" where he was stripped and then sprayed with pepper spray. He was left in the drunk tank for six hours without being allowed to wash the pepper spray from his face.

Castaneda sues the John Doe jailers for violation of his civil rights, and for assault, and he similarly sues Sheriff Purkey (as well as the current Sheriff, Esco Jarnigan) and Jailer Ronnie Inman under various theories.

With regard to Hamblen County and the Sheriff's Department employees, all three plaintiffs make allegations of not merely excessive force, but outright brutality.

6

With regard to the City of Morristown and the two city police officers, the plaintiff DuBose claims that he was arrested without cause by those two officers, and that he was assaulted by them numerous times.

*CLASS ACTION ALLEGATION*:

With respect to their request for class action status, plaintiffs seek damages, *for themselves and "others similarly situated,"* in the amount of $50,000,000.00 for their pain and suffering, physical injuries, mental anguish, embarrassment, permanent injuries, and damage to reputation.

*ANALYSIS*:

Before a suit can be certified as a class action, all the requirements of Rule 23(a), and at least one of the requirements of 23(b), must be met. *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1988).

All three plaintiffs make allegations against the Hamblen County Sheriff's Department, i.e., the jailers, and arguably there are questions of law and fact common to the three plaintiffs as well as the potential class; that is not true, however, with respect to the two police officers and the City of Morristown. The allegations against Morristown Police Department Officers Young and Sulfridge concern an assault by those two officers on DuBose only. Neither of the other two plaintiffs makes any allegations regarding any city police officer, and plaintiff DuBose makes no allegation of any other action by the two police officers after he was taken into custody by the Sheriff's Department. There is one plaintiff, Mr. Dubose, who asserts that he was assaulted by two police officers, Young and Sulfridge.

The numerosity requirement of Rule 23(a)(1) is not met.

For the same reason, the claims or defenses of the representative parties are not typical of the claims or defenses of the potential class.

Nor is there a risk that the prosecution of separate actions by other individuals would create a risk of inconsistent or varying adjudications. Either Officers Young and Sulfridge assaulted other people, or they did not; if they did, those victims are free to file their own suit for damages. Certainly there is no basis to *assume* that they did so.

Neither is there a risk that an adjudication of Mr. DuBose's claims will be dispositive of the claims of other people not before the court. Again, if there are other individuals who have been injured by Young and Sulfridge, then they are free to file their own suits, and those suits will rise or fall on their own merits.

Thus, this is not an appropriate case for class certification simply because of the limited allegations regarding the City of Morristown, its police department, and Officers Sulfridge and Young. The plaintiffs have failed to show that every requirement of Rule 23(a) has been met.

In addition, plaintiffs have failed to meet any of the requirements of Rule 23(b):

(1) Would the prosecution of separate actions by individual members of the class create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the defendants? Rule 23(b)(1)(A). This is not a case involving mere excessive force for which there could be qualified immunity in a suit filed pursuant to 42 U.S.C. § 1983; plaintiffs allege gratuitous and extended assaults. No one, including any of

8

these defendants, requires a verdict of a jury to instruct them that such conduct is unlawful. Further, again bearing in mind the nature of the allegations, the jury very well could believe that some plaintiffs (i.e., class members) were assaulted, and it certainly could disbelieve others. Such differing results is not the type of "varying adjudications" contemplated by Rule 23(1)(A).

(2) Would the prosecution of separate actions by members of the class create a risk of adjudication that would be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interest? Rule 23(b)(1)(B). Actually, the reverse is true. Again, recalling the nature of the allegations of this complaint, if there are other people who claim to have been victimized by similar conduct, it would be far more preferable that each person control the prosecution of his own case. Individual facts and circumstances will be critical to the jury's determination, as well as the credibility of each person; if any of these three proposed class representatives ultimately are deemed not credible by the jury, that determination obviously would have an extremely deleterious  affect on what could be legitimate claims of class members who are not allowed to present their own case to the jury.

(3) Have the defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole?  Rule 23(b)(2).  To the extent that any law enforcement officer or governmental entity needs to be enjoined from allowing its law enforcement officers to brutalize prisoners, it could be argued (barely) that this would be an appropriate

case for injunctive relief with respect to the entire class. However, plaintiff's did not ask for injunctive relief; they seek only damages.³

(4) Are there questions of law or fact common to the members of the class that predominate over any questions affecting only individual members, and is a class action superior to other available methods for the fair and efficient adjudication of the controversy? In this regard, the court must consider the interest of members of the class individually controlling the prosecution of their separate actions, the desirability or undesirability of concentrating the litigation of the claims in this court, any difficulties likely to be encountered in the management of a class action. Rule 23(b)(3).

Bearing in mind that the plaintiffs are seeking monetary damages on behalf of class members for injuries primarily sustained by beatings, how would any recovery be meted out? Distributing a recovery on a *per capita* basis would be unfair, since presumably the extent of beatings and the resultant injuries would vary from victim to victim. Conducting mini-trials would be disastrously wasteful of judicial resources and defeats the very purpose of Rule 23. Allowing an administrator to determine how much should be paid to any given class member in effect requires the mini-trials discussed above. It would be extremely *undesirable* to concentrate the claims in the form of a class action, and the difficulties in

---

³"Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001)."
  Rule 23 (b)(2) certification is inappropriate where the primary relief is monetary . . . . *Id.*

10

managing the action would be considerable.[4]

As noted earlier in this report, a person who has been physically assaulted and injured understandably would not want to surrender the prosecution of his case to a class representative, inasmuch as the credibility of that representative and the ultimate legitimacy of *his* claim will be determinative of the outcome of the class member's claim.

It is respectfully recommended that this case not be certified as a class action for the reasons aforesaid.[5]

Respectfully submitted:

                                             s/ Dennis H. Inman
                                        United States Magistrate Judge

---

[4] If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.' *Zinser, supra*, at 1192.

[5] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).