IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| BRETT RYAN DUBOSE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:07-CV-115 |
| | ) | |
| CITY OF MORRISTOWN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This civil action is before the court for consideration of "Defendants Roger
Overholt, Jason Young, Brian Sulfridge, and the City of Morristown's Motion for Summary
Judgment" [doc. 58] and the motion for summary judgment filed by defendants, David
Purkey, Hamblen County, Tennessee, Sheriff Otto Purkey,  Ronnie "Rookie" Inman, Doyle
Davis, and Greg Johnson in their official and individual capacities [doc. 65].  Plaintiff, Brett
Dubose,[1] has filed responses [docs. 70, 72], and the defendants have submitted reply briefs
[docs. 74, 75].[2]  Oral argument is unnecessary, and the motions are ripe for the court's
determination.

---

[1] Dubose is the only remaining plaintiff [doc. 47].

[2] The defendants identified above are the only remaining defendants [docs. 54, 68].

# I.

## *Background*

### City of Morristown Defendants

Shortly after midnight on September 26, 2004, plaintiff was pulled over by officer Jason Young in Morristown, Tennessee. Young is an officer with the City of Morristown. Young had observed plaintiff's vehicle while he, Young, had been traveling in the opposite direction and noticed that the plaintiff's vehicle was "all over the road." Young turned his vehicle around, caught up to the plaintiff and pulled him over. Young asked the plaintiff several questions and then asked him to exit his vehicle so Young could administer several field sobriety tests. Young did administer such tests and determined that plaintiff failed them. At some point during this process, Officer Brian Sulfridge of the Morristown Police Department arrived.

When Young determined plaintiff had failed the sobriety tests, he placed him under arrest. The difficulty began when the officers wanted to change the handcuffs from the front of plaintiff to behind his back. Plaintiff claims he was thrown to the ground and pepper sprayed several times during this process. The officers eventually handcuffed the plaintiff and placed him the back of the police car. When they searched plaintiff's car, they found an open and cold beer, although plaintiff had denied he had been drinking.

Once Young activated his blue lights when in pursuit of plaintiff, his dashboard video camera was turned on. The court has reviewed that video. The events concerning the

2

handcuffing occurred out of view of the camera. Only voices can be heard. Once plaintiff is in the police car, he can be heard screaming in what he later described as being in a primal state. Young turned the video back on while he was transporting plaintiff to the Hamblen County jail because the plaintiff was spitting on him and threatening to kill him. Plaintiff contends he was pepper sprayed by Young in transport. Plaintiff did not see Young or Sulfridge in the Hamblen County jail after he had been transported.

Plaintiff went to trial and was convicted by a jury of driving under the influence ("DUI"), resisting arrest, and assault. He appealed his convictions to the Court of Criminal Appeals of Tennessee which affirmed all three convictions.

<u>Hamblen County Defendants</u>

Once he arrived at the jail, plaintiff, according to his deposition testimony, was slung into the door jamb and the floor three times. He was uncuffed and slung into the drunk tank. The incident report reflects that when the officers tried to get plaintiff into the jail he spit and kicked them.

Plaintiff was kept in the drunk tank overnight. He gave detailed testimony in his deposition about the officers coming into the holding cell multiple times "at least two-deep" and beating him and pepper spraying him. The officer's incident report indicates that they responded to the drunk tank five or six times because plaintiff was yelling and beating on the door. After the fifth or sixth time and plaintiff was still irate, Officer Doyle Davis shot plaintiff three times in the chest area with the pepperball gun.

3

A video camera recorded the time plaintiff spent in the drunk tank, which the court has reviewed in its entirety. However, there is no audio so there is no way of knowing what was said to the plaintiff or what he said to the officers. In addition, much of the interaction between the plaintiff and the officers is off camera, and without audio there is no way of knowing what is occurring during those encounters. Plaintiff contends that he was beaten by the officers while they were all out of the camera's view.

## II.

### Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Id.* at 323. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Id.* at 325 (emphasis in original).

4

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

### III.

#### *Analysis*

### City of Morristown Defendants' Motion for Summary Judgment

<u>Plaintiff's § 1983 claims for arrest without probable cause and excessive force</u>

Plaintiff alleges that he was arrested without probable cause and that excessive force was used during his arrest. Defendants contend that based upon *Heck v. Humphrey*,

512 U.S. 477 (1994), plaintiff is barred from raising these claims because he went to trial and was found guilty of ("DUI"), resisting arrest, and assault. The court agrees that plaintiff cannot raise these § 1983 claims.

"*Heck* bars § 1983 plaintiffs from advancing claims that, if successful, 'would necessarily imply the invalidity' of a prior conviction or sentence. However, if 'the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.'" *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005) (quoting *Heck*, 512 U.S. at 487). In *Cummings*, the plaintiff brought an excessive force claim after he had been convicted on a state assault charge. At the district court level, the magistrate judge had determined that if plaintiff succeeded on any of his federal constitutional claims, it would necessarily imply the invalidity of his state court misdemeanor assault conviction. The Sixth Circuit concluded:

> We agree with the magistrate judge that success on Cummings' excessive force claim would necessarily imply the invalidity of his state assault conviction. The struggle between Cummings and the officers gave rise to both Cummings assault conviction and the excessive force claim, and the two are inextricably intertwined. Additionally, Cummings could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge. Thus, we hold that *Heck* bars Cummings' excessive force claim from moving forward, and we affirm the district court's grant of summary judgment to Defendants on this claim.

*Id*. at 682-83.

6

For the same reasons, the plaintiff's excessive force claim in this case is barred from going forward. His struggle with the arresting officers gave rise to both his resisting arrest and assault convictions. The excessive force claim brought in this case is directly connected with his arrest, and they are all "inextricably intertwined." To allow plaintiff to raise this claim now would "necessarily imply the invalidity" of his convictions for resisting arrest and assault. *Heck*, 512, U.S. at 487.

The same reasoning applies to plaintiff's claim for arrest without probable cause. Plaintiff was convicted of DUI by a jury. Based upon the principles in *Heck*, if plaintiff were successful on that claim, the validity of the DUI judgment and conviction would be placed in doubt.[3] *Id.* In addition, plaintiff's conviction on the state law charges provides the defendants with "a complete defense to this cause of action brought under § 1983." "Where police officers have made an arrest, the resulting conviction is a defense to a § 1983 action claiming the arrest was made without probable cause." *Cunningham v. Sisk,* No. 1:01-CV-182, 2003 WL 23471541, *8 (E.D. Tenn. Dec. 4, 2003) (citing *Walker v. Schaeffer,* 854 F.2d 138, 143 (6th Cir 1988); *Cameron v. Fogarty*, 806 F.2d 380, 387 (2nd Cir. 1986); *White v. Tamlyn*, 961 F. Supp. 1047, 1055 (E.D. Mich. 1997)).

Accordingly, plaintiff's § 1983 claims for arrest without probable cause and excessive force cannot go forward against Young, nor can they go forward against Sulfridge to the extent it may be construed they have been asserted against him. Summary judgment

---

[3] To the extent plaintiff has made out a claim for deficient investigation prior to his arrest against defendant Young, that claim fails for the same reasons.

7

on these claims will, therefore, be granted.

Plaintiff's Claims Against Overholt and
the City of Morristown for Failure to Train

Plaintiff asserts a claim against Overholt and the City of Morristown for a failure to train Young. At this point the court notes that the only allegations in the complaint against Overholt are contained in this count. There are no allegations that he acted in his individual capacity during the arrest of the plaintiff. Thus, all allegations against Overholt in his individual capacity will be dismissed.[4]

The allegations as to Overholt regarding the inadequate training are considered in his official capacity as the Chief of Police of the City of Morristown, Tennessee. In the context of § 1983, "actions against parties in their official capacities are, essentially, actions against the entities for which the officers are agents." *Littlejohn v. Rose*, 768 F.2d 765, 772 (6th Cir. 1985). Such suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 n.55 (1978). Therefore, both defendants are public entities or municipal defendants under the court's analysis.

"A municipality may be liable for a constitutional violation by individuals when those individuals acted pursuant to an official policy of the municipality." *Voyticky v.*

---

[4] In response to the summary judgment motion, plaintiff argues only that the City is liable on the failure to train claim.

8

*Vill. of Timberlake*, 412 F.3d 669, 679 (6ᵗʰ Cir. 2005) (citing *Monnell,* 436 U.S. at 691.

However, in order for municipal liability to exist, a constitutional violation has to occur.

*Voyticky*, 412 F.3d at 679 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986);

*Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6ᵗʰ Cir. 2001)("If no constitutional

violation by the individual defendants is established, the municipal defendants cannot be held

liable under § 1983."); *see also Bukowski v. City of Akron*, 326 F.3d 702, 712-13 (6ᵗʰ Cir.

2003) ("[T]he determination that the City's officials did not violate the plaintiffs'

constitutional rights resolves the claim against the City as well.") (citing *Scott v. Clay

County*, 205 F.3d 867, 879 (6ᵗʰ Cir. 2000) where the court noted that the "conclusion that no

officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the

claim against the County as well").

The court has determined that no constitutional claim can go forward in this

case and that the individual defendants are entitled to summary judgment. Therefore,

plaintiff's municipal liability claim cannot stand. In any event, plaintiff's inadequacy of

training claim against the City would fail because he has not presented any proof that there

was a custom or policy that officers were systematically not trained and that such a policy

"amounts to deliberate indifference to the rights of persons with whom the police come into

contact." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6ᵗʰ Cir. 1992) (citing *City of

Canton v. Harris*, 489 U.S. 378, 388-89 (1989)). Nor has plaintiff presented any proof that

the city "policymakers deliberately chose a training program which would prove inadequate."

9

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Plaintiff has offered only conclusory allegations and case citations to support his inadequate training claim. This is not enough. He must present proof to demonstrate the existence of a City policy and the action of the policy makers. On that basis alone the claim would fail.

### Claim for Violation of the
### Tennessee Constitution

Plaintiff has alleged a claim based on the Tennessee Constitution. However, plaintiff cannot state a claim for violation of the Tennessee Constitution because "Tennessee does not recognize an 'implied cause of action for damages based upon violations of the Tennessee constitution.'" *Carlson v. Lunsford*, No. 05-1025 B/An., 2007 WL 470437, at *9 (W.D. Tenn. Feb. 8, 2007) (citing *Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n,* 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999)); *see also Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) ("The plaintiff can state no claim of a state constitutional violation in this case because Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution."). Accordingly, summary judgment on this claim will be granted.

Plaintiff has also asserted several state law claims. The court finds it appropriate to decline to exercise supplemental jurisdiction over these state law claims as no claims arising under federal law remain against the City of Morristown defendants. The court will dismiss the claims raised under state law without prejudice. This decision is an appropriate exercise of this court's discretion. 28 U.S.C. § 1367(c)(3); *Wexley v. Michigan*

*State Univ.*, 821 F. Supp. 479, 487 (W.D. Mich. 1993).

For the reasons set forth above, the motion for summary judgment filed by defendants Overholt, Young, Sulfridge, and the City of Morristown will be granted. These defendants will be dismissed from this civil action.

### Hamblen County Defendants'
### Motion for Summary Judgment

#### Defendant David Purkey

David Purkey is the County Mayor of Hamblen County, Tennessee. He is identified in the caption of the complaint, but there are no allegations asserted against him within the body of the complaint in connection with this plaintiff. In his response to the summary judgment motion, plaintiff makes unsupported statements alleging that Mayor Purkey should be kept in the lawsuit because he gave testimony in another case that shows he is aware of the actions of jail personnel toward inmates. Such unsupported allegations are insufficient to overcome summary judgment.

In responding to a well supported motion for summary judgment, an adverse party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Sixth "[C]ircuit has long held that '[m]ere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden'" of demonstrating that there is a genuine issue for trial. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (quoting *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 127[5] (6th Cir. 1974)). Plaintiff has not done

11

that as to David Purkey. This, in addition to the fact that there are no allegations in the complaint regarding David Purkey in relation to the plaintiff, require that summary judgment be granted in his favor.

## John Doe Defendant/Randy McDonald

In his response to the summary judgment motion, plaintiff for the first time refers to a defendant named Randy McDonald as one of the John Doe defendants. Defendants point out in their reply brief that plaintiff never named Randy McDonald as a party; never sued him; and never served him with summons. They argue correctly that in this circuit substituting a named defendant for a "John Doe" defendant is a change in party not a substitution of party.

An action cannot be commenced against fictitious parties. *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968) (action against Doe defendants never commenced because they were not identified nor served with process); *accord Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). "Substituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties." *Id*. at 240. "[U]ntil an amendment adding additional defendants has been permitted by the court, the John Doe allegations are merely 'surplusage'. . . ." *Dunn v. Paducah Int'l Raceway*, 599 F. Supp. 612, 613 n.1 (W.D. Ky. 1984) (citing *Hannah v. Majors*, 35 F.R.D. 179, 180 (W.D. Mo. 1964)). The alleged John Doe defendant Officer Randy McDonald has not been properly brought into this lawsuit. Therefore, the court will completely disregard any

12

argument concerning McDonald and any conduct attributed to McDonald.

Additionally, the court at this time will dismiss the other named John Doe Defendants and John Does 1-6 identified in the caption of the complaint. These John Doe defendants have not been served with process within 120 days of the filing of the complaint on May 25, 2007. Rule 4(m) provides in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

There is no showing that plaintiff has obtained service of process on any of the John Does, and more than 120 days have passed since the filing of the complaint. Failure to effect service of process on John Doe defendants within the 120 days as required by Rule 4(m) is grounds for dismissing such defendants. *Doughty v. City of Vermillion*, 118 F. Supp. 2d 819, 821 n.1 (N.D. Ohio 1999) (failure to complete service of process on John Doe defendants within 120 days an additional reason for dismissing those defendants); *Cox v. Lawson,* No. CIV .A. 397CV-678-S, 1998 WL 34078441 (W.D. Ky. Dec. 18, 1998) (failure to show good cause for not meeting service requirements of Rule 4(m) grounds for dismissing "Unknown Defendants"); *Collins v. IRS,* No. 1:94-CV-685, 1995 WL 545285 (N.D. Ohio May 26, 1995) (failure to obtain service on John/Jane Doe defendants in accordance with Rule 4(m) grounds for dismissal of those defendants). Accordingly, all the

John Doe defendants will be dismissed from this civil action.

## State Law Claims

Plaintiff alleges in the complaint state law claims for assault and outrageous conduct. Defendants argue that these claims should be dismissed pursuant to summary judgment. In his response to the motion, plaintiff makes no response to defendants' contention that these claims should be dismissed, and defendants state in their reply brief, "Plaintiff does not contest that his State law claims should be dismissed."

Plaintiff has failed to respond specifically with either argument or evidence to defendants' arguments that the state law claims for assault and outrageous conduct should be dismissed. Therefore, the court concludes that plaintiff has abandoned these claims. *See Nat'l Info. & Commc'ns Equip. Network v. Willigan*, No. 06-28-DLB, 2007 WL 2979928, at *10 (E.D. Ky. Oct. 11, 2007) (citing *Larimore v. Grant*, No. 3:03CV664-S, 2006 WL 2037390, at *1 n.3 (W.D. Ky. July 17, 2006) (declaring claim abandoned where the plaintiff failed to address the claim in brief in opposition to defendant's motion for summary judgment, but addressed other claims)). *See also Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005); *Bradley v. Mary Rutan Hosp. Assoc.*, 322 F. Supp. 2d 926, 932 n.7 (S.D. Ohio 2004). Accordingly, summary judgment on plaintiff's claims for assault and outrageous conduct will be granted, and those claims will be dismissed.

14

The court further notes at this juncture that plaintiff has presented no supporting argument or evidence concerning his Sixth Amendment claim for right to counsel. Therefore, the court also considers that claim abandoned, and it will be dismissed as well.

<u>Officers Doyle Davis and Greg Johnson</u>

Defendants Davis and Johnson have been sued in their official and individual capacities. With regard to the official capacity claims, "suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself." *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006). "[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quotation marks and citation omitted). Thus, the suits against these defendants in their official capacities are suits against Hamblen County, a defendant in this lawsuit. There is no reason to maintain the official capacity suits against Davis and Johnson, and summary judgment on these claims will be granted.

As to the claims brought against them in their individual capacities, both officers contend that they are entitled to qualified immunity. Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*

*v. Fitzgerald*, 457 U.S. 800, 818 (1982). "This immunity shields officials 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Perez v. Oakland County*, 466 F.3d 416, 426 (6th Cir. 2006) (quoting *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005)). Plaintiff has the burden of demonstrating that defendants are not entitled to qualified immunity. *See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007) (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991)).

In evaluating whether an official or officer is entitled to qualified immunity, the court undertakes a two-part analysis: "(1) whether, considering the allegations in the light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Elyria*, 502 F.3d at 491 (quoting *Swiecicki v. Delgado*, 463 F.3d 489, 497-498 (6th Cir. 2006)). "The focus of the inquiry is not whether the claimed constitutional right was established on a general level, but whether on the specific facts of the case reasonable officials could disagree on whether the particular conduct under scrutiny violated the Constitution." *Gratsch v. Hamilton County*, 12 F. App'x 193, 202 (6th Cir. 2001) (citing *Anderson v. Creighton,* 483 U.S. 635, 640-41 (1997)).

Plaintiff alleges that his rights under the Fourth Amendment to be free from excessive force, under the Fifth Amendment to be free from punishment without due process, and under the Eighth and Fourteenth Amendment to be free from cruel and unusual punishment have been violated.[5] Plaintiff's claim is that he was beaten by Davis and Johnson

---

[5] As noted above, plaintiff has abandoned his claim under the Sixth Amendment for the right (continued...)

several times while he was detained in the drunk tank over night. Thus, plaintiff was a pretrial detainee; he was no longer in the custody of the arresting officers.

Plaintiff was not a convicted prisoner, so the Eighth Amendment deliberate indifference standard does not apply to plaintiff's excessive force claim. *See Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). At the time of the alleged beatings, plaintiff was not a free person and the force was not used in the course of an arrest or seizure so the Fourth Amendment reasonableness standard does not apply. *Lanman*, 529 F.3d at 680 (citing *Graham* 490 U.S. at 395).

> [T]he standard applying to a pretrial detainee's excessive force claim lies in the murky area between the Fourth and Eighth Amendments. At the very least, we have held that the Fourteenth Amendment . . . Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. The Fourteenth Amendment is the source of a pretrial detainee's excessive force claim because when a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eighth Amendments, the more generally applicable Due Process Clause of the Fourteenth Amendment provides the individual with protection against physical abuse by officials.

*Lanman*, 529 F.3d at 680-81 (internal quotations and citations omitted).

The Sixth Circuit has not yet articulated the exact level of protection afforded pretrial detainees by the Due Process Clause. *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) ("While there is room for debate over whether the Due Process Clause grants

---

[5](...continued)
to counsel.

pretrial detainees more protections than the Eighth Amendment does, we need not resolve that debate here. Under either constitutional guarantee, an excessive-force claimant must show something more than *de minimis* force." (cases cited therein)). Therefore, the court will dismiss plaintiff's claims based on the Fourth, Fifth, and Eighth Amendments and consider his excessive force claim stemming from his time in the drunk tank as brought under the Fourteenth Amendment Due Process Clause.

The first step in the qualified immunity analysis is a determination of whether a constitutional right has been violated. *Elyria*, 502 F.3d at 491. Plaintiff testified in his deposition that several times the officers came in the drunk tank and then outside the view of the camera beat him. Defendants argue that the video shows that plaintiff was continually beating on the door, screaming, and "acting in a manner not conducive to the orderly operation of a jail." They argue that they came into the holding cell and eventually shot the plaintiff with the pepperball gun because he would not calm down. Defendants also point out that plaintiff testified in detail about officers beating him who were not even on duty that night and that the video does not support plaintiff's testimony about the beatings, so his testimony should be completely disregarded.

The court has reviewed all three of the DVD's of the time plaintiff spent in the drunk tank. The video contains no audio, so the court cannot tell to what extent the plaintiff was or was not screaming or beating on the door. The court also cannot know what was said to plaintiff by the officers when they came into the room or what he said to them. The video

18

does show that several times the officers came into the room and went out of the view of the camera, just as the plaintiff described. Without audio, however, it is impossible to establish at this point what occurred during these encounters. While the plaintiff did not appear to be injured or bloodied, the picture quality is poor. Neither the plaintiff nor the defendants submitted any medical records that would either confirm or refute that plaintiff was beaten or injured while in the drunk tank.

Thus, there are clearly material issues of fact concerning what occurred outside the view of the camera. These are the events on which plaintiff bases his excessive force claim and upon which defendants Davis and Johnson seek qualified immunity. However, "when 'the legal question of qualified immunity turns upon which version of facts one accepts,' summary judgment cannot be granted." *Vance v. Wade*, 546 F.3d 774, 787 (6th Cir. 2008) (Daughtrey, J., concurring) (citing *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000) (quoting *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998)); *see also Griffith v. Coburn*, 473 F.3d 650, 656-57 (6th Cir. 2007) (quoting *Sova*). In this case, plaintiff says he was beaten by the officers off camera. Whether he was is a material issue of fact, and qualified immunity cannot be granted to Davis and Johnson in their individual capacities. Therefore, summary judgment will be denied.

19

<u>Sheriff Otto Purkey and Jailor Ronnie Inman</u>

Defendants Otto Purkey and Ronnie Inman have been sued in their individual and official capacities.  Neither officer was on duty the night plaintiff was kept in the drunk tank.  Plaintiff contends that these defendants are liable based on supervisory liability resulting from a policy of inadequate training subordinates, encouragement or condoning of the specific incident, and a failure to conduct a reasonable inquiry after the fact.

**Supervisory Liability**

Liability under § 1983 must be based on more than the right to control employees.  *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior.  There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citing *Hays*, 668 F.2d at 872-74).

"Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'" *Greene v. Barber,* 310 F.3d 889, 899 (6th Cir. 2002) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

20

There is no showing that Sheriff Purkey or Jailor Inman engaged in any active

unconstitutional behavior. Neither man was present at the jail the night plaintiff was arrested

and brought to the jail where he spent the night in the drunk tank. Therefore, supervisory

liability cannot be based on any active participation by these defendants in the subject events.


## Policy of Inadequately Training Subordinates

Plaintiff alleges in his complaint that Sheriff Purkey was negligent in training

the jailers entrusted to the Hamblen County Jail. In the response to defendants' motion for

summary judgment, plaintiff recasts the claim as Jailor Inman was responsible for training

the personnel under his command. There is no proof in the record that Jailor Inman had any

duty to train jail personnel.

Plaintiff appears to raise the failure to train claim against these defendants in

their individual capacities. However, "[a] supervisor is not liable pursuant to § 1983 for

failing to train unless the supervisor 'either encouraged the specific incident of misconduct

or in some other way directly participated in it. At a minimum a plaintiff must show that the

official at least implicitly authorized, approved, or knowingly acquiesced in the

unconstitutional conduct of the offending officers.'" *Phillips v. Roane County*, 534 F.3d 531,

543 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also*

*Bishop v. Hackel*, No. 07-14259, 2009 WL 1470035, at *7 (E.D. Mich. May 26, 2009) ("[A]

claim of individual supervisory liability based on a failure-to-train theory must point to a

specific action of each individual supervisor to defeat a qualified immunity claim.").

Plaintiff has not made the necessary showing to establish a failure to train claim against Sheriff Purkey and Jailor Inman in their individual capacities. The court will consider this claim as one against Sheriff Purkey in his official capacity.[6]

The Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a failure to train reflects a deliberate or conscious choice by a municipality - a policy as defined by our prior cases - can a city be liable for such a failure under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989) (quotation marks omitted). There are two situations in which deliberate indifference in the failure to train officers can be found. "One is failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700-701 (6th Cir, 2006) (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)). "A second type of . . . deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers." *Ellis*, 455 F.3d at 701 (quoting *Brown*, 172 F.3d at

_____

[6] Since the claim is considered against the Sheriff in his official capacity, there is no reason to continue to pursue a claim for failure to train against Inman in his official capacity since "suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself." *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006). "[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quotation marks and citation omitted).

931). "'A showing of simple or even heightened negligence' is not sufficient to establish deliberate indifference." *Woodby v. Bradley County*, No. 1:07-cv-3, 2008 WL 5245361, at *10 (E.D. Tenn. Dec. 16, 2008) (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997); *see also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997)).

> To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.

*Ellis,* 455 F.3d at 700 (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).

Plaintiff's presentation in response to summary judgment on the failure to train claim refers to a review of the Hamblen County Sheriff's Office Policy and Procedures Manual and Hamblen County Jail Policy and Procedures [7] which according to plaintiff "reveals a lack of policy on training." Plaintiff does not, however, specifically identify deficiencies in the county's training nor does he present any expert opinion to that effect.

Plaintiff also refers to the training that Davis and Johnson completed based on information in their personnel records. Those records have not been provided to the court. In any event, even if they were provided, there is no proof that the training these officers received was inadequate. Plaintiff's conclusory statements that the training is inadequate are

_____

[7] This submission totals 730 pages.

not sufficient.

Plaintiff simply has offered no proof that the training was inadequate, that the inadequacy resulted from deliberate indifference, and that the inadequacy was closely related to or the cause of plaintiff's injury. There is no proof to sustain a failure to train claim against Sheriff Purkey, and summary judgment will be granted.

Encouragement or Condoning Specific Incident of Misconduct/
Failure to Conduct Reasonable Inquiry After the Fact

In his response to the summary judgment motion, plaintiff argues that a lack of counseling and discipline by Inman means he "encouraged and condone (sic) the actions of his officers against Mr. Dubose." Plaintiff also argues that Sheriff Purkey is somehow liable under the same theory. These allegations were not pled in the complaint and cannot be raised for the first time in a response to summary judgment.

As to the failure to conduct a reasonable inquiry after the fact, the complaint asserts this claim against Sheriff Purkey. In the response to the summary judgment motion, plaintiff argues that Jailor Inman made no inquiry about the use of the pepper ball gun or other force used against him, so he failed in his duties. In any event, this claim has no merit and will be dismissed.

"Ordinarily, a subsequent failure to investigate is not a 'moving force' behind an alleged constitutional violation." *Woodby*, 2008 WL 5245361, at *11 (citing *Shepherd v. City of Columbus*, No. 04-CV-302, 2006 WL 840386, at *7 (S.D. Ohio Mar. 30, 2006)).

24

One district court has concluded that based on the analysis in Sixth Circuit precedent and its progeny, "'failure to investigate' can only establish municipal liability." *Anthony v. Vaccaro*, 43 F. Supp. 2d 843, 847 (N.D. Ohio 1999) (relying on *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *Dyer v. Casey*, No. 94-5780, 1995 WL 712765 (6th Cir. Dec. 4, 1995)).

Even if individual liability could go forward, plaintiff has not shown how Sheriff Purkey or Inman could be responsible. Again, they were not present on the night of the incident, so they had no active participation. The officer involved, Doyle Davis, prepared an incident report and a PepperBall Report Form concerning the subject incident. Plaintiff has not provided any evidence why this information and response were insufficient. As before, plaintiff only offers conclusory allegations without any proof to support them.

There are times when the failure to investigate "rises to the level of a policy of acquiescence that in itself was the 'moving force.'" *Woodby*, 2008 WL 5245361, at *11 (citing *Shepherd*, 2006 WL 840386, at *7). However, this requires showing a policy or custom to establish municipal liability. Plaintiff's claim that Sheriff Purkey and Jailor Inman failed to investigate the treatment he received in the drunk tank does not establish the necessary custom or policy required for municipal liability. *See Fox v. Van Oosterum,* 176 F.3d 342, 348 (6th Cir. 1999) ("[Plaintiff] has not presented evidence indicating that the [Sheriff's] decision was either part of a county policy or custom of refusing to investigate meritorious claims or anything other than an isolated, one-time event."). Plaintiff offers nothing other than an allegation that the Sheriff and Inman did not investigate the events that

occurred the night he spent in jail. This is not proof of a policy or custom of refusing to investigate. Thus, a failure to investigate claim based on municipal liability against Sheriff Purkey and Jailor Inman in their official capacities cannot be established.

<u>Hamblen County</u>

In order to hold a municipal defendant liable for constitutional violations under § 1983, a plaintiff must establish that a government policy or custom was the cause of his injuries. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). "In *Monell*, the Supreme Court explained that municipal liability under section 1983 may only attach where the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury' complained of." *Graham v. County of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004) (quoting *Monell*, 436 U.S. at 694). Plaintiff must demonstrate two elements: "(1) that a constitutional violation occurred; and (2) that the County 'is responsible for that violation.'" *Graham*, 358 F.3d at 382 (citing *Doe v. Claiborne County*, 103 F.3d 495, 505-06 (6th Cir. 1996)). "A plaintiff asserting a section 1983 clam on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy.'" *Graham*, 358 F.3d at 383 (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "There must be 'a direct causal link' between the policy and the alleged constitutional violation such

that the County's 'deliberate conduct' can be deemed the 'moving force' behind the violation." *Graham*, 358 F.3d at 383 (citing *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001)).

Even assuming *arguendo* that plaintiff has demonstrated a constitutional violation, plaintiff cannot demonstrate that the violation was caused by the execution of a policy by Hamblen County. In response to the summary judgment motion, plaintiff offers only conclusory and unsubstantiated statements regarding inaction by the Mayor's Office to actions by jail employees; the Mayor's willful disregard of complaints by inmates, and Sheriff Purkey turning a "blind eye" and allowing Inman to run the jail as he sees fit as the cause of plaintiff's injuries. Plaintiff has provided no proof to support any of these statements.

Within plaintiff's response, there are references to "Plaintiff *will establish* the existence of a clear and persistent pattern of illegal activity through the testimony of other victims; Plaintiff *will supplement* this response with a forthcoming affidavit from an inmate present during the time that Mr. Dubose was in the drunk tank; and *Plaintiff believes* that he can substantiate this claim with the deposition of Mayor David Purkey"(emphasis added). None of these referenced items were ever provided. This type of presentation will not carry the day at the summary judgment level. In responding to a well supported motion for summary judgment, an adverse party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Sixth "[C]ircuit has long held that '[m]ere conclusory

and unsupported allegations, rooted in speculation, do not meet [the] burden'" of demonstrating that there is a genuine issue for trial. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (quoting *Bryant v. Commonwealth of Ky.*, 490 F.2d 1273, 127[5] (6th Cir. 1974)).

Plaintiff simply has not met the requisite standards for establishing liability on the part of Hamblen County. "[P]laintiff never adduced evidence of a definitive City policy, custom, or usage which was an affirmative link, the moving force that animated the behavior - the acts of commission or omission - of the police officers that resulted in the constitutional violations alleged." *Molton v. City of Cleveland*, 839 F.2d 240, 246 (6th Cir. 1988). Accordingly, summary judgment will be granted on the claims asserted against Hamblen County.

## IV.

### Conclusion

For the reasons stated herein, the motion for summary judgment filed by Roger Overholt, Jason Young, Brian Sulfridge, and the City of Morristown will be granted as to all of plaintiff's federal law and Tennessee State Constitution claims. Plaintiff's state law claims will be dismissed without prejudice. The motion for summary judgment filed by the Hamblen County defendants will be granted in part and denied in part as explained above. An order consistent with this opinion will be entered.

28

ENTER:

_____ s/ Leon Jordan _____
United States District Judge